WILLIAM S. CONROY vs. FALL RIVER HERALD NEWS
PUBLISHING COMPANY.

Bristol.   October 23, 1939. — July 29, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

Libel. Damages, For tort. Evidence, Relevancy, Of malice. Practice,
Civil, Exceptions: whether error harmful. Error, Whether harmful.

At the trial of an action of tort for libel against the proprietor of a news-
paper based on a published article which, in replying to a slanderous
attack upon an employee of the defendant, went so far that it
was not privileged, it was proper to instruct the jury that, for the
provocation through the slander by the plaintiff to be considered in
mitigation of damages, the jury should find that there had not been
time for the defendant "to cool off" before he published his libel.

No prejudicial error was shown in wrongly assigning, as a reason for
striking out certain testimony, that there was a lack of evidence on
the issue to which it related, where the testimony properly was struck
out for another reason and instructions in the charge adequately left
the issue in question to the jury.

At the trial of an action against the proprietor of a newspaper, evidence
of earlier defamatory attacks upon the plaintiff in the newspaper
were admissible as evidence of malice although they were of a some-
what different character from those that formed the basis of the libel
set out in the declaration.

TORT.   Writ in the Superior Court dated January 13, 1936.

A verdict for the plaintiff in the sum of $37,500 was re-
turned before Hurley, J.   The defendant alleged exceptions
in substance to the manner in which the trial judge dealt
with the defence that provocation might be shown and con-
sidered by the jury in mitigation of damages; to the admis-
sion in evidence of three previous publications by the defend-
ant; to the striking out of testimony by the defendant's
managing editor, Delaney, of his reason for the title he gave
to the libellous cartoon; to the ruling that there was no
evidence that the plaintiff had attacked the Fall River
Herald News; and to the refusal by the judge of certain
requests for rulings described in the opinion.

F. P. Garland, (J. B. Cummings with him,) for the defend-
ant.

*T. F. O'Brien*, (*J. Seligman* with him,) for the plaintiff.

LUMMUS, J. This is an action against the publisher of a newspaper for two alleged libels published on January 11, 1936. Earlier, during the year 1935, the defendant in a number of articles had attacked the plaintiff in strong language, principally because of his conduct as State senator. These were published in a column entitled "Political Grab Bag," written by a political writer for the defendant, named Brindley. On the evening of January 8, 1936, the plaintiff delivered a public speech, reported in the defendant's newspaper, in which he indulged in vulgar abuse of Brindley. But he said, "I don't hate the Fall River Herald News," and "Its owner doesn't know the way the paper is being conducted"; also "I have respect for the Herald News staff but one rotten apple will spoil a barrel of good apples."

The alleged libels evidently were published in answer to that speech. It is unnecessary to quote them in full, for undoubtedly they could be found defamatory. The plaintiff in an editorial was called "a low-grade creature," of "crass ignorance and stupid egotism," who has tried to clothe himself in a "thin veneer of respectability." He was called "a mean, vicious and contemptible liar," whose habit of mind has been a "gutter type of politics," and who "takes refuge in the thought that self-respecting men will hesitate to answer him, by going to the necessary low level to meet and answer his abuse and scurrility." A cartoon entitled "The Boomerang" depicted the plaintiff as standing in a "Political Dump," where a waste barrel marked "Gutter Methods," apparently thrown by him, has returned to cast its contents of vermin and rubbish over him.

A libel may be privileged on the ground of self defence. "One attacked by a slander or libel has a right to defend himself, but he has no right to turn his defence into a slanderous or libellous attack, unless it clearly appears that such attack was necessary for his justification." *Borley* v. *Allison*, 181 Mass. 246, 247. A defence could seldom be effective unless one has a right in good faith to brand the

accusations as false and calumnious. *Koenig* v. *Ritchie*, 3 F. & F. 413. A defence by one whose motives are impugned may require comment upon the motives of the accuser in the same transaction. *Laughton* v. *Bishop of Sodor & Man*, L. R. 4 P. C. 495. *Shepherd* v. *Baer*, 96 Md. 152. *Brewer* v. *Chase*, 121 Mich. 526. *Chaffin* v. *Lynch*, 83 Va. 106. *Israel* v. *Portland News Publishing Co.* 152 Ore. 225, 103 Am. L. R. 470, and note. Other illustrations are found in Odgers, Libel & Slander (6th ed. 1929) 240–242. In the present case the publication plainly overran the limits of self defence, and was not privileged.

Even where no privilege can be found, a defamatory attack by the plaintiff upon the defendant can sometimes be shown in mitigation of damages. This cannot be rested on the broad ground that one who has defamed the defendant at any time in the past does not suffer the same wound to his feelings as one whose conduct has been without reproach. Wigmore, Evidence (Rev. ed. 1940) § 209. Neither can it rest on the ground that libels may be set off against each other. *Child* v. *Homer*, 13 Pick. 503, 511. Public policy requires that in general one who has been wronged in the past resort to the law for redress, instead of retorting in kind and mitigating the damages because of mutuality of wrongdoing. *Keiser* v. *Smith*, 71 Ala. 481, 486. One theory upon which a defamatory attack by the plaintiff upon the defendant may be considered in mitigation of damages, is that one who defames another invites a prompt retort, and ought not to recover full damages for injury that his knowledge of human nature should have led him to expect and that his own act brought upon him. *Sheffill* v. *Van Deusen*, 15 Gray, 485, 486. *Child* v. *Homer*, 13 Pick. 503, 511. Another theory is that defamation by one in hot blood, in retaliation for very recent injury, may be taken at a discount because of his emotional condition, and may be less harmful to the reputation if not to the feelings of the plaintiff than the same words would be if used under other circumstances. *Walker* v. *Flynn*, 130 Mass. 151, 152. *Child* v. *Homer*, 13 Pick. 503, 507. See *Faxon* v. *Jones*, 176 Mass. 206, 208.

Upon either theory, the provocation, to be considered in mitigation of damages, must be very recent, and the retort its natural consequence. If there was time for passion to subside, the provocation cannot be considered. *Child* v. *Homer*, 13 Pick. 503. *Sheffill* v. *Van Deusen*, 15 Gray, 485, 486. *Walker* v. *Flynn*, 130 Mass. 151, 152. *Quinby* v. *Minnesota Tribune Co.* 38 Minn. 528. In this respect the law of defamation resembles that of assault and battery, in which also provocation, to be admissible in mitigation of damages, must be very recent as well as causative of the assault and battery. *Avery* v. *Ray*, 1 Mass. 12. *Sheffill* v. *Van Deusen*, 15 Gray, 485, 486. *Mowry* v. *Smith*, 9 Allen, 67. *Tyson* v. *Booth*, 100 Mass. 258. *Bonino* v. *Caledonio*, 144 Mass. 299, 302. *Jackson* v. *Old Colony Street Railway*, 206 Mass. 477, 487. *Benjamin* v. *McLellan*, 237 Mass. 141, 145. *Dupee* v. *Lentine*, 147 Mass. 580. *Keiser* v. *Smith*, 71 Ala. 481.

On the matter of provocation, the judge instructed the jury in substance that if the attack made by the plaintiff in his speech of January 8, 1936, "was made upon the defendant paper, or upon a servant or agent of the defendant paper in his capacity as such servant or agent," and if the alleged libels were published so soon after the attack that it can be said that they were provoked by it, and not after "there was sufficient time for the anger or passion of the defendant, or its agents . . . , to cool off," then the provocation might be considered on the question of damages. The defendant excepted to the part of the charge that declared that the provocation could not be considered if there had been time to cool off. But it is plain from the foregoing discussion that the instruction was correct.

One Delaney, the managing editor of the defendant's newspaper, was permitted to testify that his reason for entitling the cartoon "The Boomerang" was that the filth that the plaintiff threw at the newspaper rebounded and hit the plaintiff. The judge struck out the reference to the newspaper, saying that there was no evidence that the plaintiff's attack was upon the newspaper. To this the defendant excepted. Whether the plaintiff had attacked

the newspaper or not was to be determined from his words, and not from Delaney's interpretation of them. It was proper to strike the latter from the testimony. The reason given for the action of the judge was unimportant. Much of the evidence was yet to be introduced and the judge made no final ruling that the plaintiff had made no attack upon the newspaper. Later, in the charge, the judge submitted to the jury the question whether "this alleged attack was made upon the defendant paper, or upon a servant or agent of the defendant paper in his capacity as such servant or agent," or, in distinction, "against the witness Brindley as an individual." The earlier expression of opinion by the judge had no effect upon the result of the trial. This exception must be overruled.

The fourth, ninth, fourteenth and eighteenth requests for instructions did not relate directly to any issue in the case, but asked instructions relating at best only to a single consideration bearing upon an issue. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47. The twentieth instruction requested was substantially a quotation from the opinion in *Child* v. *Homer*, 13 Pick. 503, 511. But it furnished no rule for the guidance of the jury, and might easily mislead them. Many statements that are proper in a discussion of law in an opinion of an appellate court are unsuited for reading to a jury. *Rothwell* v. *New York, New Haven & Hartford Railroad*, 223 Mass. 550. *Rich* v. *Silverman*, 216 Mass. 195, 197. There was no error in refusing these requests.

The last point argued by the defendant relates to the admissibility and effect of three earlier attacks upon the plaintiff, written by Brindley and published in the defendant's newspaper, which were admitted, subject to the defendant's exception, as evidence of malice on its part. Malice could be proved by the plaintiff to take away the defence of truth (G. L. [Ter. Ed.] c. 231, § 92) and also to enhance damages. *Faxon* v. *Jones*, 176 Mass. 206. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. The admissibility of verbal attacks by a defendant upon a plaintiff at times other than the time of the libel complained of, has been the subject of conflicting rulings in different juris-

dictions. Wigmore, Evidence (Rev. ed. 1940) §§ 403–406. All agree that expressions of hatred, ill will or anger, not themselves defamatory, are admissible. Where the utterance at another time is itself defamatory, the courts have shown marked fear that the damages awarded ostensibly for the libel or slander in suit might in fact take into account defamation at other times that might become the subject of a separate action, with a possible duplication of damages. Plainly a judge should warn the jury against awarding damages for defamation at other times where evidence of such defamation is admitted to show malice. *Clark* v. *Brown*, 116 Mass. 504, 508.

From the standpoint of relevancy, defamation at other times has a logical tendency to prove malice at the time of the libel or slander in question. A defamatory utterance, and especially a series of such utterances, may show malice at the time when made. One of the commonest of inferences is that a state of affairs, including a state of mind, once proved to exist, continues to exist. *Galdston* v. *McCarthy*, 302 Mass. 36. Wigmore, Evidence (Rev. ed. 1940) §§ 395–406. Not infrequently an inference is permissible that a state of affairs, including a state of mind, proved to exist, has existed for some time before. *Thayer* v. *Thayer*, 101 Mass. 111. *Commonwealth* v. *Finnerty*, 148 Mass. 162, 166. *Perkins* v. *Rice*, 187 Mass. 28, 30. *Beacon Trust Co.* v. *Wright*, 288 Mass. 1, 5, 6. Subject to reasonable limits as to remoteness, defamation before or after the libel or slander in issue may be received to show malice at the time of that libel or slander.

In a number of reported cases in this Commonwealth the rule has been stated that defamatory statements at other times are not admissible to show malice at the time of the libel or slander in issue, unless they are substantially similar to it. If the action is for saying that the plaintiff stole a cow, statements at other times that he committed murder or stole a horse are said not to be admissible. See *Conant* v. *Leslie*, 85 Maine, 257. That rule was derived from early English decisions at *nisi prius* that apparently are not now followed in England. *Bodwell* v. *Swan*, 3 Pick. 376. *Wat-*

*son* v. *Moore*, 2 Cush. 133, 137. *Commonwealth* v. *Damon*, 136 Mass. 441, 448, and cases cited. *Doane* v. *Grew*, 220 Mass. 171, 180. Only in the *Watson* case were defamatory statements differing from the libel or slander in issue actually before the court for a ruling, and in that case not only was there a failure to show that malice was a material issue, but the defamatory statements at another time were parts of a criminal complaint. and because of that fact were held no evidence of malice. Apart from the *Watson* case, the rule stated in our reported cases has never had the sanction of actual judicial decision in this Commonwealth. And in *Commonwealth* v. *Damon*, 136 Mass. 441, 448, it was referred to as though open to question, although the earlier statement of it was repeated.

The reasons given in our early cases for the exclusion of defamatory statements that differ from the libel or slander in issue, do not impress us. We are unable to see why defamation of a different sort may not equally well show malice. The danger of excessive damages is not materially greater where the defamation is of a different sort, and may equally well be guarded against by instructions. Notwithstanding the statements in our early cases, we are of opinion that no sound distinction can be drawn between defamation of the same sort at other times and defamation of a different sort.

Although some of the earlier attacks upon the plaintiff, admitted in evidence in the present case, might be found defamatory and were based on somewhat different grounds, we think that they were all properly admitted to show malice at the time of the libel in issue, and that the jury could not rightly have been instructed, in accordance with the defendant's second, seventh and twelfth requests, that they were not evidence of malice. This accords with the law as laid down in a number of other jurisdictions. *Barrett* v. *Long*, 3 H. L. Cas. 395, 413, 414, which did not take the distinctions discussed below in *Barrett* v. *Long*, 8 Ir. L. 331, and *Long* v. *Barrett*, 7 Ir. L. 439. *King* v. *Londerville*, 8 Sask. L. R. 376. *Hazaree* v. *Kamaludin*, South African L. R. [1934] App. Div. 108, 121, 122. *Scott* v. *Times-*

*Mirror Co.* 181 Cal. 345, 12 Am. L. R. 1007, and note, which is supplemented in 86 Am. L. R. 1297. *Register Newspaper Co.* v. *Worten,* 111 S. W. 693. *Sanford* v. *Houghton,* 184 Mich. 44, 46. *Julian* v. *Kansas City Star Co.* 209 Mo. 35, 85–87. *Saladino* v. *Gurdy,* 80 N. H. 211, 212, 213. *McDermott* v. *Evening Journal Association,* 14 Vroom, 488, affirmed *Evening Journal Association* v. *McDermott,* 15 Vroom, 430. *Stearns* v. *Cox,* 17 Ohio, 590. *Van Derveer* v. *Sutphin,* 5 Ohio St. 293. *Mannix* v. *Portland Telegram,* 136 Ore. 474, 529. *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 169, 170. *Walters* v. *Sentinel Co.* 168 Wis. 196, 204.

*Exceptions overruled.*